S. J. ANDREWS v. W. N. PARKS AND HIS WIFE, MRS. W. N. PARKS.

(Filed 13 December, 1939.)

1. **Vendor and Purchaser § 25: Trial § 27a—When purchaser is advised of former conveyance and elects to take his chance with record title, he may not recover damages for failure of title.**

Defendants executed an option contract for sale of certain timber to plaintiff. Plaintiff resold the timber at a profit, but deed to plaintiff's purchaser was refused because of want of title, it appearing that defendants had conveyed the land to a third person by prior deed. Plaintiff instituted this action to recover as damages the difference between the purchase price stipulated in the option contract and the price his pur-

chaser had agreed to pay for the timber. Defendants introduced evidence to the effect that they had informed plaintiff of the prior deed and that plaintiff or his attorney had stated that plaintiff would take his chance with the record title. *Held:* If the jury should believe defendant's testimony, plaintiff would not be entitled to recover, and therefore a peremptory instruction that the jury should answer the issue of damages in a specified sum if they believed all the evidence is reversible error.

**2. Vendor and Purchaser § 25—Evidence that vendors received nothing for prior conveyance held competent under facts of this case.**

Where, in the purchaser's action for damages for failure of title in the vendors by reason of their prior conveyance to a third person, the vendors introduce evidence that they had informed the purchaser or his attorney of the prior conveyance and that it was made upon condition that the grantee should sell the land and divide the proceeds of sale after payment of the tax liens, it is error for the court to exclude the vendors' testimony that they had received nothing for the prior conveyance, since such evidence is consistent with their contention as to the character of their deed and tends to relieve them from the imputation of unfair dealing.

APPEAL by defendants from *Hamilton, Special Judge,* at May Term, 1939, of BLADEN. New trial.

*W. H. Fisher and E. C. Robinson for plaintiff, appellee.*
*Fred P. Parker and Paul B. Edmundson for defendants, appellants.*

SEAWELL, J. The plaintiff, Andrews, sues the defendants, W. N. Parks and wife, for a loss of profits in a timber deal growing out of an option deed made by defendants to him. Plaintiff alleges that he had sold the timber conveyed to him by defendants in this option deed to Greene Brothers Lumber Company, Inc., at an advanced price, and that defendants, having previously conveyed the timber to one B. D. Tatum, were unable to make a good title to plaintiff or his designated purchaser; that his prospective purchaser bought from Tatum, the holder under defendants' prior deed, and was, therefore, lost to him.

Upon the evidence and the instructions to the jury plaintiff recovered of the defendants $1,025.00, the difference between the option price and the price at which Greene Brothers Lumber Company agreed to buy from him.

The option deed under which the plaintiff sues was executed 12 March, 1936. The deed made by defendants to B. D. Tatum was dated 23 March, 1934, was filed for registration 3 April, 1934, and registered 4 April, 1934. In addition to this, there was evidence of a tax deed made by Bladen County to B. D. Tatum dated 4 April, 1936, and registered on 6 April, 1936, and a deed made by B. D. Tatum and wife to Greene

Brothers Lumber Company, Inc., of even date with the tax deed above referred to, that is, 4 April, 1936, and filed for registration on 6 April.

In evidence also was the deed from A. W. Parks and wife, Minnie L. Parks, to Greene Brothers Lumber Company, Inc., made in pursuance of the option deed, but never accepted by Greene Brothers Lumber Company because of the defect in the title above pointed out.

It may be inferred from the evidence that E. C. Robinson represented this plaintiff in searching the title to the property in controversy, and in certain conversations and transactions taking place between the plaintiff and the defendants, at which times Robinson was present and sometimes the spokesman. These conversations bear upon the contentions of the defendants that they had given to the plaintiff due notice as to the condition of the title and before the execution of the option deed to him.

Robinson testified that Andrews came to his office in Elizabethtown and, together, they went to the tax collector's office to identify Parks, and found the name of W. N. Parks, who had listed the land and who lived at LaGrange. He accompanied Andrews to LaGrange, and negotiations were opened for the option deed.

Robinson testified that he did not find upon the records any deed from Parks to Tatum at the time he looked at the index; that at the time of the trial the deed from Parks to Tatum had been recorded; that it was not there when he first looked at it.

With reference to the Tatum deed, the defendant, W. N. Parks, testified: "The first time I saw Mr. E. C. Robinson was at my home in the first part of 1936. Mr. Andrews came with him. He wanted me to make a price on this land and I wouldn't make any price. I asked them to make me an offer and they made me an offer of $600.00, and I told them that I couldn't say what I would do until I had looked over the land here. He later returned to my home in LaGrange. I had a conversation then with Mr. Robinson in the presence of Mr. S. J. Andrews. I told him I had made a quitclaim deed to Mr. Tatum. I told that to Mr. Robinson. I told him I made the quitclaim deed to Mr. Tatum, that I had made it in order to sell the land. I told them Mr. Tatum was to pay the taxes, was to sell the property and pay the taxes and we would divide the balance after doing that. I don't remember anybody being present at that time except Mr. Andrews and Mr. Robinson and myself. I was to estimate the timber and write them—which I did. I wrote those cards to notify them. Before I wrote the cards I told them I had promised the Greene Brothers Lumber Company that I would give them a chance at this property when I offered the property for sale and I told them I would have to notify Mr. Greene and Greene Brothers Lumber Company, and they told me they were representing Greene; Mr. Robinson told me that. Mr. Andrews was present." He further testified:

"Later Mr. Robinson returned to see me with Mr. Andrews. Mr. Robinson told me before this option was signed that he and Mr. Andrews had been down here to the register of deeds' office in Bladen County and searched the title and found there were no conveyances from me to anyone and no mortgages. This was in LaGrange. I think one time the young boy was present. The other time Mr. Andrews was present or right near. That is the time I told them about the B. D. Tatum quitclaim deed, as a result of which he told me he had searched the title and that there wasn't anything on the record at all. After telling them about the Tatum deed they said they would take a shot at what was on the record. Mr. Robinson said to make them the deed and it would be satisfactory to them. Mr. Robinson said that they would take a shot at the title, that there wasn't anything on the record at all. This was after he had made the statement about abstracting the title." And, further: "My wife and I signed this option relying upon statements made me by Mr. Robinson, and $25.00 was paid to me at the time I signed the option and I have tendered that into court." And, referring to the deed made to Greene Brothers Lumber Company, Inc., by defendants, he testified: "I relied upon the statement made to me by Mr. E. C. Robinson, in the presence of Mr. S. J. Andrews, as my authority to make this deed and had it made by my brother. I relied on those statements."

E. C. Robinson, for the plaintiff, was recalled and testified: "I say positively that I never made a statement in my life to Mr. Parks that I represented the Greene Brothers Lumber Company. At that time I had never met Mr. A. H. Greene or his brother until after this option was signed and after Mr. Andrews had been in the timber with him once or twice, and the morning that I took Mr. Andrews to Ammons to meet Mr. Greene was the first time that I ever saw the gentleman in my life, to know him. I did not tell Mr. Parks that I had looked up the title to this property and that no conveyances had been made by him. Each time Mr. Parks told us that he owned the timber himself. He did not make any statement to me about the B. D. Tatum deed. I didn't know about B. D. Tatum until this matter came up here at the last term of court, about a year ago." On previous cross-examination he had denied that the defendant had made any statement to himself and the plaintiff with regard to the Tatum deed.

Upon this evidence the trial judge instructed the jury as follows: "And the fourth issue is, 'What damages, if any, is the plaintiff entitled to recover of the defendant?' The court instructs you that under all the evidence, if you believe the evidence, it would be your duty to answer that issue $1,025.00."

In the foregoing there is evidence on the part of the defendants tending to show that a full disclosure as to the state of the title to the land

or timber in controversy was made by W. N. Parks directly to E. C. Robinson and the plaintiff during the negotiations and before the execution of the option deed on which plaintiff relies. He testified that he not only told them of the deed made to Tatum but of the terms on which Tatum held, a part of which was to free the land from the tax encumbrance out of the purchase price. The tax deed which Tatum took, in violation of his trust, if defendant is to be believed, procured apparently to put him in better position to convey to the Greene Brothers Lumber Company upon rejection of plaintiff's conveyance, had not yet been made. Defendant's evidence was to the effect that Andrews, represented by Robinson as his attorney, declared his willingness to accept an option deed from the defendant, notwithstanding information given by defendant, and take his chances with the Tatum conveyance. "That they would take a shot at the title."

Defendant stated: "I relied upon their information as to searching the title, and, relying upon their information, signed this option dated the 13th of March, 1936, Mr. Robinson had prepared when he got here."

If the jury believed the testimony of Parks, plaintiff insisted upon taking the conveyance with his eyes open and, presently advised by his attorney at law, determined to "take a shot at the title," taking such title as he might get under the deed, and, therefore, could not recover anything in this action. If, on the contrary, the jury should believe the testimony of Robinson and the plaintiff, to the effect that defendant said nothing at all about the Tatum deed or any encumbrance upon the property, this circumstance, at least, would not be in the way of his recovery. Upon this contradictory state of the evidence it was error to instruct the jury that, "under all the evidence, if they believed the evidence, it would be their duty to answer the issue as to damages $1,025.00." *Fertilizer Works v. Cox,* 187 N. C., 654, 122 S. E., 479; *S. v. Murphrey,* 186 N. C., 113, 118 S. E., 894; *Bank v. Wester,* 188 N. C., 374, 376, 124 S. E., 155; *Sterling Mills v. Milling Co.,* 184 N. C., 461, 463, 114 S. E., 756.

We think, also, under the circumstances of this case, it was error to exclude the proposed testimony of defendant that he had received nothing for the Tatum deed. The evidence was consistent with his contention as to the character of that deed, and at least tended to relieve the defendant from the imputation of unfair dealing, which would arise from his attempt to profit by selling the same timber twice. Except for its relevancy and importance in that respect, its introduction doubtless would not have been challenged. While it does not appear from the evidence whether the trust reposed in Tatum was coupled with an interest and irrevocable, the fact that it had remained unperformed by Tatum, and that defendant had received no benefit from it, affords some

explanation of his willingness to enter into the option contract at the insistence of plaintiff, after having fully explained the extent to which he was obligated under the Tatum deed.

For these errors the defendants are entitled to a new trial, and it is so ordered.

New trial.